UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BUFFALO TEACHERS FEDERATION, BUFFALO
EDUCATIONAL SUPPORT TEAM-NEA/NY,
TRANSPORTATION AIDES OF BUFFALO, NEA/NY,
SUBSTITUTES UNITED/BUFFALO-NEA/NY,
BUFFALO COUNCIL OF SUPERVISORS AND
ADMINISTRATORS, AFSCME LOCAL 264,
PROFESSIONAL, CLERICAL AND TECHNICAL
EMPLOYEES' ASSOCIATION and LOCAL 409
INTERNATIONAL UNION OF OPERATING
ENGINEERS,

                    Plaintiffs,
v.                                        **DECISION AND ORDER**
                                                04-CV-457S

RICHARD TOBE, THOMAS E. BAKER, ALAIR
TOWNSEND, H. CARL McCALL, JOHN J. FASO,
JOEL A. GIAMBRA, MAYOR ANTHONY MASIELLO,
RICHARD A. STENHOUSE and ROBERT G.
WILMERS, *in their official capacities as directors/
members of the Buffalo Fiscal Stability Authority*,

                    Defendants.
_____

## I. INTRODUCTION

Plaintiffs in this action seek relief from this Court's previous adverse judgment concerning the much-litigated Wage Freeze Resolution ("Wage Freeze" or "Freeze") enacted by the Buffalo Fiscal Stability Authority ("BFSA").

On July 3, 2003, the New York State Legislature, through the Buffalo Fiscal Stability Authority Act ("Act"), created the Control Board to stabilize and improve the City of Buffalo's failing financial health. One of the powers the legislature vested in the Control Board was the discretion to freeze wages. On April 21, 2004, the Control Board exercised

1

that discretion and enacted the Wage Freeze, which, for purposes of this case, had the effect of eliminating contractual salary increases that Plaintiffs had negotiated with the City of Buffalo.

On June 17, 2004, Plaintiffs, the Buffalo Teachers Federation and others equally affected, brought suit in this Court challenging the Wage Freeze Resolution as violative of the Contract and Takings Clauses of the United States Constitution. See U.S. Const. art. I, § 10, cl. 1; U.S. Const. amend. V. On August 18, 2005, this Court denied Plaintiffs' Motion for Summary Judgment and granted Defendants' Motion, finding that the Wage Freeze was not unconstitutional (Docket No. 52.) Subsequently, on September 21, 2006, the Second Circuit affirmed that decision. (Docket No. 57.) Presently, Plaintiffs seek relief from those decisions under Fed. R. Civ. P. 60(6). (Docket No. 59.) Further, both the City of Buffalo and the Board of Education for the City School District of the City of Buffalo seek to intervene under Fed. R. Civ. P. 24(a). (Docket Nos. 63, 65.) For the following reasons, Plaintiffs' motion is denied and the motions to intervene are denied as moot.

## II. BACKGROUND

**A.    Facts**

The Plaintiffs' salary structure is at the center of this litigation. Each Plaintiff employee organization is a party to a collective bargaining agreement with the City of Buffalo school district. (Plaintiffs' Statement, ¶ 2; Defendants' Statement, ¶¶ 1-8; 11, 13, 15, 17, 19, 21, 23, 25.) These agreements provide for periodic step increases to be paid to the covered employees. (Plaintiffs' Statement, ¶¶ 3-4; Defendants' Statement, ¶¶ 27, 29.) On average, the covered employees are contractually entitled to receive salary

increases of roughly 2% per year. (Plaintiffs' Statement, ¶ 5.) Those increases were halted by the Wage Freeze.

The history of the Wage Freeze and the reasons for its enactment were well documented in this Court's previous Decision and Order and the Second Circuit's affirmance thereof. See Buffalo Teachers Federation v. Tobe, 446 F. Supp. 2d 134 (W.D.N.Y. 2005); Buffalo Teachers Federation v. Tobe, 464 F.3d 362 (2d Cir. 2006) *cert. denied*, 550 U.S. 918,127 S. Ct. 2133, 167 L. Ed. 2d 864 (2007). But since those decisions, on July 1, 2007, the BFSA lifted the Wage Freeze. The BFSA's contrasting positions as to the effect this would have on the Plaintiffs' step increases serves as the basis for this motion.

In March of 2005, Dorothy Johnson, the executive director of the BFSA, submitted a declaration to this Court in support of the BFSA's then-pending motion for summary judgment in which she made the following statement regarding the effect the removal of the Wage Freeze would have on Plaintiffs' salaries:

> The Wage Freeze Resolution permanently deprives the [Plaintiffs] of any wage increases to which they would be entitled for the period of the freeze; once the freeze is lifted, however, the frozen wage increases will take effect. In other words, if a $1,000 wage increase would have taken effect in April 2004 but for the Resolution and the wage freeze is lifted in April 2005, the affected employees will not be reimbursed for the $1,000 wage increase suspended during the period of the freeze, but their wages or salaries would include such an increase going forward.

(Dorothy Johnson Declaration, ¶ 52; Docket No. 26.)

But the BFSA eventually reversed course and instead took the position – upheld on state law grounds by the New York Court of Appeals – that the Act should be read to mean

3

that affected employees' wages or salaries would not include increases that would have accrued during the Wage Freeze period. (See Rumore Declaration, ¶ 5;Docket No. 59-2). An example, provided by Plaintiffs and undisputed by Defendants, may help clarify this distinction.

By contract, Plaintiffs move up one step at the beginning of every school year. (Id., ¶¶ 2-4.) Under Defendants' initial explanation, assuming that a Plaintiff was on Step 5 at the time the Wage Freeze took effect in 2004, that Plaintiff would be immediately placed on Step 9 at the beginning of the 2007 school year – the first year after the Freeze was lifted. So while the plaintiff would lose the money she would have gained from her step increases in the three Wage Freeze years, she would have been restored to her proper step level once the Freeze was lifted. Under its changed and current position, that teacher was instead placed at Step 6 upon the beginning of the 2007 school year. Thus, not only did she lose the wages from the three years that the Freeze was in effect, but she also did not accrue periodic step increases during those years. (See id., ¶ 4.) This change prompted Plaintiffs to file this motion under Rule 60.

As alluded to above, it also prompted Plaintiffs to bring an action in New York State court. There, Plaintiffs contended that under the Act they were entitled to advance the four salary steps that they would have received had the Freeze not been imposed. See Matter of Meegan v. Brown, 16 N.Y.3d 395, 948 N.E.2d 425, 924 N.Y.S.2d 1 (2011). But the New York Court of Appeals reversed two lower court decisions and found that the Act empowered the BFSA to cancel all step increases that would have accrued while the Wage Freeze was in effect. Id.

## B. Procedural History

On June 17, 2004, Plaintiffs commenced this action by filing a Complaint in the United States District Court for the Western District of New York. Defendants filed their Answer on July 27, 2004. On February 28, 2005, the parties filed Cross-Motions for Summary Judgment. After full briefing on the motions, this Court held oral argument on May 24, 2005, and reserved decision until August 18, 2005 when it granted Defendants' Motion for Summary Judgment and denied Plaintiffs' Motion. (Docket No. 52.) That decision was affirmed in September of the following year by the Second Circuit. (Docket No. 57.) Plaintiffs, after losing their state-court claims, unsuccessfully sought to recall the Mandate of the Second Circuit. (See Addendum to Plaintiffs' Memorandum of Law; Docket No. 59-1.) In denying the motion on June 6, 2011, the Second Circuit noted that it was not "intimating any views with respect to the viability of either a motion that may be advanced pursuant to Fed. R. Civ. P. 60 or a new complaint." (Id.)

Consequently, Plaintiffs brought this motion on June 30, 2011. (Docket No. 59.) In the immediately ensuing months, the City of Buffalo and the Board of Education for the City School District of the City of Buffalo filed motions seeking to intervene under Fed. R. Civ. P. 24(a), arguing that their financial interest in the outcome of this case warrants such relief. (Docket Nos. 63, 65.)

### III. DISCUSSION

## A. Federal Rule of Civil Procedure 60(b)

Rule 60(b) allows a court to relieve a party from a final judgment under the following various circumstances:

>(1) mistake, inadvertence, surprise, or excusable neglect;
>(2) newly discovered evidence . . .;
>(3) fraud, misrepresentation, or other misconduct of an opposing party;
>(4) the judgment is void;
>(5) the judgment has been satisfied, . . .[or] it is based on an earlier judgment that has been reversed or vacated . . .; or
>(6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b)

While motions under sub-parts (1), (2), and (3) must be made "no more than a year after the entry of the judgment or order or the date of the proceeding," Rule 60(b)(6) relief is available if the movant acts in a "reasonable time." Id. at (c)(1); see also Paddington Partners v. Bouchard, 34 F.3d 1132, 1133 (2d Cir.1994). "What constitutes reasonable time for the purposes of Rule 60(b)(6) will necessarily vary with the particular circumstances of a case." P.T. Busana Idaman Nurani v. Marissa by GHR Indus. Trading Corp., 151 F.R.D. 32, 35 (S.D.N.Y. 1993). "Assessing whether a movant has satisfied the 'reasonable-time' limitations requires 'scrutin[izing] the particular circumstances of the case, and balanc[ing] the interests in finality with the reason for delay.'" Hom v. Brennan, --- F. Supp. 2d ----, No. 03-CV-2198, 2011 WL 6945698, at *4 (E.D.N.Y. Dec. 31, 2011) (citing Clarendon Nat. Ins. Co. v. TIG Reinsurance Co., 183 F.R.D. 112, 118 (S.D.N.Y. 1998); see also Kotlicky v. U.S. Fidelity & Guar. Co., 817 F.2d 6, 9 (2d Cir. 1987). Relief typically will not be granted "where the applicant fails to move for relief promptly." Grace v. Bank Leumi Trust Co. of N.Y., 443 F.3d 180, 190 n.8 (2d Cir. 2006).

If sought in a timely fashion, relief under Rule 60(b) is still only appropriate in cases presenting "extraordinary circumstances," Rodriguez v. Mitchell, 252 F.3d 191, 201 (2d Cir. 2001) or "where the judgment may work an extreme and undue hardship." DeWeerth v.

Baldinger, 38 F.3d 1266, 1272 (2d Cir.1994). Further, because Rule 60(b) relief disrupts the finality of judgments, the Second Circuit has stated that Rule 60(b) motions are disfavored and left their resolution to "the sound discretion of the district court." Stevens v. Schneiderman, No. 05 Civ. 10819, 2011 WL 6780583, at *4 (S.D.N.Y. Dec. 23., 2011) (citing Marrero Pichardo v. Ashcroft, 374 F.3d 46, 55 (2d Cir. 2004); Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986)) (internal citation marks omitted). The burden of proof is on the party seeking relief from judgment. United States v. Int'l Broth. of Teamsters, 247 F.3d 370, 391 (2d Cir. 2001).

**B.     Plaintiffs' Motion**

Plaintiffs do not presently seek to overturn this Court's previous decision, but rather seek to re-open the case and set a briefing schedule presumably with that goal ultimately in mind. They argue that this relief is proper because this Court and the Second Circuit never adjudicated the case considering Defendants' new position as to the effect the Wage Freeze had on Plantiffs' step increases. They point specifically to the Second Circuit's emphasis on the temporary nature of the Wage Freeze in finding that the Freeze was reasonable and therefore non-violative of the Contract Clause. They argue that Defendants' misrepresentation effected a "sea change" that should compel this Court to reconsider its previous decision.

Defendants make several arguments in response. First, they argue that this action is not timely. They note that it has been almost five years since the Second Circuit's decision, arguing that no justification can render such a long delay "reasonable." Providing another reason why this action is untimely, they argue that this motion should have been brought under Rule 60(b)(3), with its incumbent one-year statute of limitations, which,

7

counting from the date of the Second Circuit's decision, Plaintiffs have missed by almost five years.

Next, citing the state court litigation, Defendants argue that this action, even if timely, is barred by the doctrine of *res judicata*. Lastly, they argue that, in any event, the Plaintiffs' motion should be denied on its merits because the change in question does not present an "extraordinary circumstance" warranting such an exceptional remedy.

### 1. Timeliness

As noted, Plaintiffs purportedly bring this action under Fed. R. Civ. P. 60 (b)(6). Such a motion contains no strict time limit, but must be made within a "reasonable time" after the adverse judgment. Here, this Court granted Defendants' Motion for Summary Judgment on August 18, 2005 – nearly six years before Plantiffs' filed the present Motion. That decision was affirmed on September 21, 2006 – nearly five years before Plaintiffs' filed this Motion. Granted, this is an atypical case because the act that serves as the basis of this Motion, the repeal of the Wage Freeze, did not occur until July 1, 2007. Yet, even calculating elapsed time from this date, Defendants waited *over four years* to bring this Motion. As Defendants note, courts have found delays much shorter than this unreasonable. See NewCard, Inc., v. VanDijke, 137 Fed. App'x 384, 2005 WL 1331337 (2d Cir. 2005) (summary order finding that Southern District of New York did not abuse its discretion in denying relief under Rule 60(b)(6) where the delay was 27 months); Cleary v. United States, 144 Fed. App'x 204, 2005 WL 2436549 (2d Cir. 2005) (same with a delay of two years); Truskoski v. ESPN, Inc., 60 F.3d 74, 77 (2d Cir. 1995) (no abuse of discretion where delay was over one year). For their part, Plaintiffs do not, either in their Supporting Memorandum or in their Reply Memorandum, cite any case where a delay of

this magnitude was found to be reasonable.

Plaintiffs' lack of explanation for this delay in their Supporting Memorandum exacerbates the issue. In deciding this Motion, this Court must undertake a balancing test that weighs the interests in finality against the reason for delay. See Hom, 2011 WL 6945698, at *4 . But Plaintiffs waited until their Reply Memorandum to address this crucial test. Although they mention the state court proceedings in their Supporting Memorandum, they barely hint that this was the reason for their delay. In their Reply Memorandum, they finally make the full-fledged argument that they waited until the state court proceedings were complete to bring this action because they deemed it more prudent to litigate their claims in state court before seeking the admittedly extraordinary relief requested here. Yet, their failure to raise this argument initially means that this Court need not consider it. See Knipe v. Skinner, 999 F.2d 708, 711 (2d Cir.1993) (declining to hear arguments raised for the first time in the reply brief).

But even giving the argument due consideration, it is still unpersuasive. Plaintiffs elected to litigate their dispute in the courts of New York. While that decision may have been reasonable in itself, they made an affirmative choice to delay bringing an action in this Court. Thus, the delay is directly attributable to them. The Supreme Court has instructed that relief under Rule 60(b)(6) is unavailable if more than one year has passed and the party seeking such relief is even partly to blame. Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 393, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993) ("To justify relief under subsection (6), a party must show 'extraordinary circumstances' suggesting that the party is faultless in the delay.") (internal citations omitted). This Court consequently finds that a delay of this length, attributable to the

movant, is unreasonable.

Moreover, it is clear that relief under the more general Rule 60(b)(6) cannot be considered if one of the more specific Rule 60(b) clauses is appropriate. Int'l Broth. of Teamsters, 246 F.3d at 392. Despite Plantiffs' efforts to characterize this as a motion under Rule 60(b)(6), this Court finds that Plaintiffs' motion should have been brought pursuant to Rule 60(b)(3), which allows relief from a judgment for a misrepresentation. The entire basis for its motion is that the BFSA misrepresented to this Court and the Second Circuit the nature and extent of the Wage Freeze. Such an allegation fits squarely within Rule 60(b)(3) and its strict one-year statue of limitations. See Warren v. Garvin, 219 F.3d 111, 114 (2d Cir. 2000); Fed. R. Civ. P. 60(c)(1).

Plaintiffs attempt to evade the limitations of Rule 60(b)(3) by arguing that they are not alleging that the BFSA made factual misrepresentations, but rather that Defendants asserted an incorrect "legal position," which they then argue is not a proper subject for 60(b)(3). But this proposition finds no support in the law or in logic. Plaintiffs cite two cases in support of this argument, and neither is on point. Instead, both cases stand for the unremarkable proposition that a party cannot invoke Rule 60(b)(3) (or any provision of Rule 60, for that matter) on the basis of his opponent's differing legal theory. See Provident Sav. Bank v. Popovich, 71 F.3d 696, 699 (1st Cir. 1995) ("Provident merely adopted a litigation position and presented it to the district court. In our adversarial system, the obligation to present the contrary legal argument fell on Popovich, not Provident"); Roger Edwards, LLC v. Fiddes & Son Ltd., 427 F.3d 129, 137 (7th Cir. 1995). This is clearly not the case here, and even if it were, these cases hold that a party cannot obtain relief in such situations. Instead, by the plain terms of Plaintiffs' motion, it is clear that they seek relief from

10

Defendants' misstatement or misrepresentation regarding the effect that the Wage Freeze would have on Plaintiffs' salary level increases. As such, Plaintiffs' motion is constrained by a one-year statute of limitations and, filed at least four years after it learned of the misrepresentation, is time barred. See Warren, 219 F.3d at 114 ("Rule 60(b)(6) may not be used to circumvent the 1-year limitations period that governs Rule 60(b)(1)[-(3)].").

### 2.    Merits

Although this action is time barred, for the sake of thoroughness, this Court will also address the merits of Plaintiffs' motion.

The Constitution provides that no state shall pass any law "impairing the Obligation of Contracts." U.S. Const. art. 1, § 10. "[T]o determine if a law entrenches impermissibly on contract rights" the Second Circuit poses "three questions to be answered in succession: (1) is the contractual impairment substantial and, if so, (2) does the law serve a legitimate public purpose such as remedying a general social or economic problem and, if such purpose is demonstrated, (3) are the means chosen to accomplish this purpose reasonable and necessary." Buffalo Teachers Federation, 464 F.3d at 372. Both this Court and the Second Circuit found that the Wage Freeze satisfied this three-part inquiry and did not violate the Contract Clause.

Plaintiffs now argue that this case should be re-opened because Defendants' alleged misrepresentation may change this Court's and the Second Circuit's conclusion regarding the third prong of that analysis – the reasonableness of the contract impairment. They assert that the Freeze as implemented – cancelling accrued step levels – was never actually litigated, thus requiring Rule 60(b) relief.

However, in addition to the reasons discussed above, this motion is denied because

Defendants have not met their burden demonstrating extraordinary circumstances warranting this request. This is so for at least three reasons.

First and foremost, this Court did not rely on Defendants' representation concerning the accrual of step increases. Instead, it placed emphasis on the limited time period that the Wage Freeze would be in place. In fact, this Court held that the Wage Freeze was reasonable (and therefore non-violative of the Contract Clause) for several reasons, none of which turned on the accrual of step increases. It held:

> First, a wage freeze can only be imposed during a "control period." N.Y. Pub. Auth. Law § 3858(2). A "control period" consists of that period of time when the city is working toward compliance with the requirements of the BFSA. See N.Y. Pub. Auth. Law §§ 3851(10), 3858(1). The Control Board is not authorized to impose a wage freeze while serving in an advisory capacity. See N.Y. Pub. Auth. Law §§ 3851(1), 3858(2). Second, a wage freeze can only be imposed if the Control Board finds that it is "essential to the adoption or maintenance of a city budget or a financial plan [under the BFSA]." N.Y. Pub. Auth. Law § 3858(2)(c). Absent such a finding, no wage freeze can be imposed. Third, any imposition of a wage freeze must be periodically reviewed by the Control Board. N.Y. Pub. Auth. Law § 3858(2)(d). Finally, the wage freeze will only remain in place until the Control Board determines that the fiscal crisis warranting the wage freeze has abated. N.Y. Pub. Auth. Law § 3858(2)(d).

Buffalo Teachers Federation, 446 F.2d at 150. All these facts remain unchanged and, consequently, so would this Court's ultimate conclusion, thus foreclosing Rule 60 relief. See Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir.1995) (movant must point to facts reasonably expected to alter the conclusion reached by the court).

Second, although Plaintiffs correctly note that the Second Circuit placed emphasis on the temporary nature of the Freeze in finding that it was reasonable, they fail to connect the temporary nature of the Freeze to the accrual of step level increases. The Second

Circuit held only that "the prospective and temporary nature of the wage freeze convinces us of its reasonableness." Buffalo Teachers Federation, 464 F.3d at 372. There is no evidence that the Second Circuit, in so holding, was referring to the temporary nature of the step increases as opposed to the temporary nature of the Freeze generally, which lasted only three years. Indeed, the step increase aspect of the Freeze was by no means at the forefront of this litigation. Defendants did not even make an argument to this Court that the Freeze was reasonable because of this fact. Instead, their alleged misrepresentation was limited to the Johnson Declaration, which was not cited by either this Court or the Second Circuit. Further, this aspect of the Freeze is only mentioned via footnote in Plaintiffs' brief to the Second Circuit and the court does not mention it in its opinion. There is no indication that this proved to be pivotal or even significant in its decision. Because the burden lies with the moving party, see International Brotherhood of Teamsters, 247 F.3d at 391, Defendants have not shown, as they must, that this warrants the drastic remedy of upsetting a final judgment.

Third, the Second Circuit did not base its reasonableness finding on the temporary nature of the Freeze alone. Indeed, the appellate court found that the temporary nature "underscored" its reasonableness. Buffalo Teachers Federation, 464 F.3d at 371. It first found that the Wage Freeze was reasonable because it was a last resort measure, holding, "[w]ith the above standard in mind, we hold the wage freeze was reasonable and necessary . . . [because] the [BFSA] imposed the freeze only after other alternatives had been considered and tried." Id. at 371. The temporary nature of the freeze, which Plaintiffs try to relate to the step increases, thus served only as a secondary consideration. As such, Plaintiffs have not demonstrated that the changed circumstances could reasonably alter

13

the Second Circuit's determination, and therefore it cannot be said that Plaintiffs suffered an "extreme or undue hardship." See DeWeerth, 38 F.3d at 1272. Consequently, Defendants Rule 60(b) motion is denied.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion is denied and the motions to intervene are denied as moot.

## V. ORDERS

IT HEREBY IS ORDERED, that Plaintiffs' Motion for Relief from a Judgment (Docket No. 59) is DENIED.

FURTHER, that the City of Buffalo's Motion to Intervene (Docket No. 63) is DENIED as moot.

FURTHER, that the Board of Education for the City School District of the City of Buffalo's Motion to Intervene (Docket No. 65) is DENIED as moot.

SO ORDERED.

Dated:	February 8, 2012
	Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court